TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MORGAN J. COHEN (Cal. Bar No. Pending)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2848
     Facsimile: (213) 894-0141
     E-mail:   morgan.cohen@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:21-00138(A)-GW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT DALTON WINFIELD COSTAHAUDE |
| v. | |
| DALTON WINFIELD COSTAHAUDE, aka "Dalton L", | |
| Defendant. | |

     This constitutes the plea agreement between DALTON WINFIELD
COSTAHAUDE ("defendant") and the United States Attorney's Office for
the Central District of California (the "USAO") in the above-
captioned case.  This agreement is limited to the USAO and cannot
bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

     Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and
provided by the Court, appear and plead guilty to count four in the


8/6/2021

indictment in <u>United States v. Dalton Winfield Costahaude</u>,

CR No. 2:20-00138(A)-GW, which charges defendant with being a felon

in possession of firearms and ammunition, in violation of 18 U.S.C.

§ 922(g)(1).

> b.   Not contest facts agreed to in this agreement.

> c.   Abide by all agreements regarding sentencing contained

in this agreement.

> d.   Appear for all court appearances, surrender as ordered

for service of sentence, obey all conditions of any bond, and obey

any other ongoing court order in this matter.

> e.   Not commit any crime; however, offenses that would be

excluded for sentencing purposes under United States Sentencing

Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

within the scope of this agreement.

> f.   Be truthful at all times with the United States

Probation and Pretrial Services Office and the Court.

> g.   Pay the applicable special assessment at or before the

time of sentencing unless defendant lacks the ability to pay and

prior to sentencing submits a completed financial statement on a form

to be provided by the USAO.

Defendant further agrees:

> a.   To forfeit all right, title, and interest in and to

any and all monies, properties, and/or assets of any kind, derived

from or acquired as a result of, or used to facilitate the commission

of, or involved in the illegal activity to which defendant is

pleading guilty, specifically including, but not limited to, the

following seized by law enforcement in the investigation of defendant

(collectively, the "Forfeitable Assets"):

1        i.    A Glock 21, .45 caliber, semi-automatic

2    handgun, bearing serial number DES910;

3        ii.    A Remington 12-gauge pump-action shotgun,

4    bearing serial number 1158074V;

5        iii.    Hundreds of rounds of Lake City Manufacturing

6    .308 caliber ammunition;

7        iv.    Hundreds of rounds of Federal Cartridge

8    .308 caliber ammunition;

9        v.    Hundreds of rounds of Winchester .308 caliber

10   ammunition;

11       vi.    Hundreds of rounds of Barnaul 7.62x39mm

12   caliber ammunition;

13       vii.    Hundreds of rounds of Winchester 5.56mm

14   caliber ammunition;

15       viii.    Hundreds of rounds of X-Treme .300 Blackout

16   caliber ammunition;

17       ix.    Hundreds of rounds of Winchester .45 caliber

18   ammunition;

19       x.    Hundreds of rounds of Winchester 9mm Luger

20   caliber ammunition;

21       xi.    Hundreds of rounds of Aguila 9mm Luger

22   caliber ammunition;

23       xii.    Hundreds of rounds of Companhia Brasileira

24   de Cartuchos 9mm Luger caliber ammunition;

25       xiii.    Hundreds of rounds of Federal Cartridge 9mm

26   Luger caliber ammunition;

27       xiv.    Approximately 54 pounds of assorted caliber

28   ammunition cartridge casings;

xv.     Approximately 5 pounds of assorted caliber ammunition primers;

xvi.     Approximately 19 pounds of assorted ammunition propellant powder;

xvii.     A firearm silencer, 6 3/4 inches in length, black metal, bearing no manufacturer markings and no serial number;

xviii.     A firearm silencer, 5 7/8 inches in length, silver metal, bearing no manufacturer markings and no serial number;

xix.     A firearm silencer, 9 5/8 inches in length, black metal, bearing no manufacturer markings and no serial number;

xx.     A 7.62 caliber AK-47-type machinegun, black metal with a wooden fixed stock, pistol grip, and upper/lower handguard, bearing no serial number;

xxi.     A 7.62 caliber AK-47-type machinegun, black metal with a black metal folding stock, wood type pistol grip and upper/lower handguard, bearing no serial number;

xxii.     An AR-15-type .300 Blackout caliber rifle with a barrel of less than 16 inches in length, bearing no serial number; and

xxiii.     A ballistic vest containing two VISM/NcSTAR model BPC 1012 ballistic plates.

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture

4

and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.   To the abandonment to the United States of any interest of the defendant in the following firearms bearing no legitimate manufacturer's mark or serial number (commonly referred to as "ghost guns"), as well as the following firearm and ammunition

manufacturing equipment and component parts (collectively, the "Seized Firearms and Equipment"):

        i.      A .308 caliber semi-automatic rifle, tan in color, with a black barrel, with a scope, bearing no serial number;

        ii.      A 410 gauge semi-automatic shotgun, black metal, bearing no serial number;

        iii.      A 9mm caliber semi-automatic pistol, black metal, bearing no serial number;

        iv.      A 9mm caliber semi-automatic Polymer80 pistol, with tan grips and a threaded barrel, bearing no serial number;

        v.      A 9mm caliber semi-automatic Polymer80 pistol, with black polymer grips and a threaded barrel;

        vi.      A .45 caliber semi-automatic pistol, silver metal with black colored handgrips, bearing no serial number;

        vii.      A .45 caliber semi-automatic pistol, silver metal with black colored handgrips, bearing no serial number;

        viii.      An AK-47-type machine gun receiver frame, black metal, unknown caliber, unknown manufacturer, bearing no serial number;

        ix.      An AR-15-type 5.56mm caliber firearm, bearing no serial number;

        x.      A Hornady Lock-n-Load ammunition re-loader, red and black metal, bearing serial number 59369;

        xi.      A Central Machinery drill press, 12 speed, gray and black metal, bearing serial number 566851939; and

        xii.      A Central Machinery hydraulic ram/press, 6-ton, gray and black metal.

1          k.    To acknowledgement by defendant that he is the sole

2 owner of the Seized Firearms and Equipment and that no person or

3 entity has an interest in the Seized Firearms and Equipment.

4          l.    To complete any legal documents (including, but not

5 limited to, an ATF Form 3400.1 – Abandonment) required for the

6 transfer of title of the Seized Firearm to the United States.

7 THE USAO'S OBLIGATIONS

8 The USAO agrees to:

9          a.    Not contest facts agreed to in this agreement.

10          b.    Abide by all agreements regarding sentencing contained

11 in this agreement.

12          c.    At the time of sentencing, provided that defendant

13 demonstrates an acceptance of responsibility for the offense up to

14 and including the time of sentencing, recommend a two-level reduction

15 in the applicable Sentencing Guidelines offense level, pursuant to

16 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

17 additional one-level reduction if available under that section.

18          d.    Recommend that defendant be sentenced to a term of

19 imprisonment no higher than the low end of the applicable Sentencing

20 Guidelines range.  For purposes of this agreement, the low end of the

21 Sentencing Guidelines range is that defined by the Sentencing Table

22 in U.S.S.G. Chapter 5, Part A.

23 NATURE OF THE OFFENSE

24 Defendant understands that for defendant to be guilty of the

25 crime charged in count four of the indictment, that is, felon in

26 possession of firearms and ammunition, in violation of Title 18,

27 United States Code, Section 922(g)(1), the following must be true:

28 First, defendant knowingly possessed firearms or ammunition; second,

7

the firearms or ammunition had been shipped or transported from one state to another or between a foreign nation and the United States; third, at the time defendant possessed the firearms or ammunition, defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and fourth, at the time defendant possessed the firearms or ammunition, defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

<u>PENALTIES</u>

Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 922(g)(1), is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

The Court will also order forfeiture of the Forfeitable Assets pursuant to 18 U.S.C. § 924(d)(1), 26 U.S.C. § 5872, and 28 U.S.C. § 2461(c).

Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty

regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On or about February 26, 2021, in Los Angeles County, within the Central District of California, defendant knowingly possessed inside his apartment 17 firearms, including three silencers, large quantities of ammunition, body armor, and firearm and ammunition manufacturing equipment and component parts.

Among the firearms defendant knowingly possessed were: a Glock 21, .45 caliber, semi-automatic handgun, bearing serial number DES910, manufactured in Austria; and a Remington 12-gauge pump-action shotgun, bearing serial number 1158074V, manufactured in New York. Both guns were manufactured outside of the State of California and therefore had, prior to February 26, 2021, been shipped or transported from one state to another, or between a foreign nation and the United States.

Among the ammunition defendant knowingly possessed were:

- Hundreds of rounds of Lake City Manufacturing .308 caliber ammunition, manufactured in Missouri;

- Hundreds of rounds of Federal Cartridge .308 caliber ammunition, manufactured in Minnesota;
- Hundreds of rounds of Winchester .308 caliber ammunition, manufactured in Illinois or Mississippi;
- Hundreds of rounds of Barnaul 7.62x39mm caliber ammunition, manufactured in Russia;
- Hundreds of rounds of Winchester 5.56mm caliber ammunition, manufactured in Missouri;
- Hundreds of rounds of X-Treme .300 Blackout caliber ammunition, manufactured in Idaho;
- Hundreds of rounds of Winchester .45 caliber ammunition, manufactured in Illinois or Mississippi;
- Hundreds of rounds of Winchester 9mm Luger caliber ammunition, manufactured in Illinois or Mississippi;
- Hundreds of rounds of Aguila 9mm Luger caliber ammunition, manufactured in Mexico;
- Hundreds of rounds of Companhia Brasileira de Cartuchos 9mm Luger caliber ammunition; manufactured in Brazil;
- Hundreds of rounds of Federal Cartridge 9mm Luger caliber ammunition, manufactured in Minnesota or Idaho;
- Approximately 54 pounds of assorted caliber ammunition cartridge casings;
- Approximately five pounds of assorted caliber ammunition primers; and
- Approximately 19 pounds of assorted ammunition propellant powder.

All of the above-listed ammunition was manufactured outside of the State of California and therefore had, prior to February 26,

2021, been shipped or transported from one state to another, or between a foreign nation and the United States.

Defendant also knowingly possessed the following 15 firearms bearing no legitimate manufacturer's mark or serial number (commonly referred to as "ghost guns"):

- A .308 caliber semi-automatic rifle, tan in color, with a black barrel, with a scope, bearing no serial number;
- A 410 gauge semi-automatic shotgun, black metal, bearing no serial number;
- A 9mm caliber semi-automatic pistol, black metal, bearing no serial number;
- A 9mm caliber semi-automatic Polymer80 pistol, with tan grips and a threaded barrel, bearing no serial number;
- A 9mm caliber semi-automatic Polymer80 pistol, with black polymer grips and a threaded barrel;
- A .45 caliber semi-automatic pistol, silver metal with black colored handgrips, bearing no serial number;
- A .45 caliber semi-automatic pistol, silver metal with black colored handgrips, bearing no serial number;
- A firearm silencer, 6 3/4 inches in length, black metal, bearing no manufacturer markings and no serial number, which defendant knew to be a firearm silencer and which had not been registered to defendant in the National Firearms Registration and Transfer Record;
- A firearm silencer, 5 7/8 inches in length, silver metal, bearing no manufacturer markings and no serial number, which defendant knew to be a firearm silencer and which had not

been registered to defendant in the National Firearms Registration and Transfer Record;

- A firearm silencer, 9 5/8 inches in length, black metal, bearing no manufacturer markings and no serial number, which defendant knew to be a firearm silencer and which had not been registered to defendant in the National Firearms Registration and Transfer Record;

- A 7.62 caliber AK-47 type machinegun, black metal with a wooden fixed stock, pistol grip, and upper/lower handguard, bearing no serial number, which defendant knew to be a machine gun;

- A 7.62 caliber AK-47 type machinegun, black metal with a black metal folding stock, wood type pistol grip and upper/lower handguard, bearing no serial number, which defendant knew to be a machine gun;

- An AK-47 type machine gun receiver frame, black metal, unknown caliber, unknown manufacturer, bearing no serial number;

- An AR-15-type .300 Blackout caliber rifle with a barrel of less than 16 inches in length, bearing no serial number, which defendant knew to be a short-barreled rifle, and which had not been registered to defendant in the National Firearms Registration and Transfer Record; and

- An AR-15-type 5.56mm caliber firearm, bearing no serial number, which defendant knew to be a short-barreled rifle.

Furthermore, defendant knowingly possessed body armor, namely, a ballistic vest containing two VISM/NcSTAR model BPC 1012 ballistic plates, after such body armor had been sold and offered for sale in

13

interstate and foreign commerce.

Defendant knowingly possessed the foregoing 17 firearms, ammunition, and body armor knowing that he had previously been convicted of a felony which is punishable by a term of imprisonment exceeding one year and which is a crime of violence under U.S.S.G. § 4B1.2, namely, Assault with a Deadly Weapon with Possible Great Bodily Injury, in violation of California Penal Code Section 245(a)(4), in the Superior Court of the State of California, County of Los Angeles, Case Number MA062713, on or about August 7, 2014.

Additionally, beginning on an unknown date and continuing until on or about February 26, 2021, in Los Angeles County, within the Central District of California, defendant willfully engaged in the business of manufacturing and dealing firearms and manufacturing ammunition without having a license, which defendant knew was unlawful.  Defendant possessed, inside his apartment, the following equipment and component parts that he used to unlawfully manufacture firearms and ammunition, which he then sold:

- A Hornady Lock-n-Load ammunition re-loader, red and black metal, bearing serial number 59369;
- A Central Machinery drill press, 12 speed, gray and black metal, bearing serial number 566851939;
- A Central Machinery hydraulic ram/press, 6-ton, gray and black metal; and
- Assorted firearms parts and accessories.

Defendant willfully offered to, and did, sell firearms, firearm components, and ammunition -- including machine guns and large capacity magazines -- to other people.  Defendant devoted time, attention, and labor to selling firearms as a business with the

14

1  intent of making profits through the repeated purchase and/or

2  manufacture and subsequent sale of firearms.  Defendant kept records

3  in his mobile phone of what his customers previously payed and

4  presently owed him in connection with prior sales of firearms and

5  firearm components.

6      Furthermore, defendant sold and/or received with the intent to

7  sell two or more firearms to other persons, knowing or having reason

8  to believe that such conduct would result in the transfer of two or

9  more firearms to persons whose possession of the firearms would be

10  unlawful or who intended to use or dispose of the firearms

11  unlawfully.

12      Beginning on a date unknown and continuing until March 11, 2021,

13  defendant was manufacturing an AK-47-type machinegun bearing no

14  serial number for Individual-1.  Defendant received the firearm parts

15  he was using to manufacture the firearm for Individual-1 with the

16  intent to transfer such firearm, when completed, to Individual-1.

17  Defendant knew or had reason to know that it would be unlawful for

18  Individual-1 to possess the firearm and/or that Indvidiaul-1 intended

19  to use the firearm unlawfully.  Specifically, defendant knew or had

20  reason to believe that Individual-1 was a drug dealer associated with

21  a criminal gang.  On February 20, 2021, Individual-1 offered to sell

22  Oxycodone to defendant.  Individual-1 had been previously convicted

23  of four offenses punishable by imprisonment for a term exceeding one

24  year.

25      On a date unknown but prior to February 20, 2021, defendant

26  manufactured and sold a firearm, along with ammunition, to an unknown

27  associate of Inidividual-1.  Defendant knew or had reason to know

28  that this individual intended to use the firearm unlawfully.

On a date unknown but prior to February 22, 2021, defendant received a Glock handgun with the intent to transfer such firearm to another person.  On February 22, 2021, Individual-2 texted defendant that an unknown associate of his sought to immediately purchase a Glock handgun for cash.  Defendant offered to sell Individual-2's associate a Glock handgun for $800.  Defendant knew or had reason to know that the unknown associate of Individual-2 intended to use the firearm unlawfully.  Individual-2 had been previously convicted of four offenses punishable by imprisonment for a term exceeding one year.

SENTENCING FACTORS

Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

Defendant and the USAO agree to the following applicable sentencing guideline factors:

| Base Offense Level: | 22 | U.S.S.G. § 2K2.1(a)(3) |
| Between 8 and 24 Firearms: | +4 | U.S.S.G. § 2K2.1(b)(1)(B) |
| Trafficking in Firearms: | +4 | U.S.S.G. § 2K2.1(b)(5) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  The base offense level set forth above is based on information currently known to the government regarding defendant's criminal history.  Defendant understands and agrees that defendant's base offense level could be increased if defendant is an armed career criminal under U.S.S.G. §§ 4B1.4 and 18 U.S.C. § 924(e), or if defendant has additional prior conviction(s) for either a crime of violence or a controlled substance offense under U.S.S.G. § 2K2.1.  If defendant's base offense level is so altered, defendant and the USAO will not be bound by the base offense level agreed to above.

Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charge, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support

defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

Defendant agrees that, provided that the Court imposes a total

term of imprisonment within or below the range corresponding to an

offense level of 27 and a criminal history category calculated by the

Court, defendant gives up the right to appeal all of the following:

(a) the procedures and calculations used to determine and impose any

portion of the sentence; (b) the term of imprisonment imposed by the

Court; (c) the fine imposed by the Court, provided it is within the

statutory maximum; (d) to the extent permitted by law, the

constitutionality or legality of defendant's sentence, provided it is

within the statutory maximum; (e) the term of probation or supervised

release imposed by the Court, provided it is within the statutory

maximum; and (f) any of the following conditions of probation or

supervised release imposed by the Court: the conditions set forth in

Second Amended General Order 20-04 of this Court; the drug testing

conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

Defendant also gives up any right to bring a post-conviction

collateral attack on the conviction or sentence, except a post-

conviction collateral attack based on a claim of ineffective

assistance of counsel, a claim of newly discovered evidence, or an

explicitly retroactive change in the applicable Sentencing

Guidelines, sentencing statutes, or statutes of conviction.

Defendant understands that this waiver includes, but is not limited

to, arguments that the statute to which defendant is pleading guilty

is unconstitutional, and any and all claims that the statement of

facts provided herein is insufficient to support defendant's plea of guilty.

The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 27 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

21

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not

error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

23

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

*Morgan J. Cohen*                              9/09/2021
MORGAN J. COHEN                                Date
Assistant United States Attorney

                                               9/9/21
DALTON WINFIELD COSTAHAUDE                     Date
Defendant

                                               9-9-21
JAMES E. BLATT                                 Date
Attorney for Defendant DALTON
WINFIELD COSTAHAUDE

24

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____                    9/9/21
DALTON WINFIELD COSTAHAUDE              Date
Defendant

25

1          CERTIFICATION OF DEFENDANT'S ATTORNEY

2          I am DALTON WINFIELD COSTAHAUDE's attorney.  I have carefully

3    and thoroughly discussed every part of this agreement with my client.

4    Further, I have fully advised my client of his rights, of possible

5    pretrial motions that might be filed, of possible defenses that might

6    be asserted either prior to or at trial, of the sentencing factors

7    set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8    provisions, and of the consequences of entering into this agreement.

9    To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the factual basis set

14   forth in this agreement is sufficient to support my client's entry of

15   a guilty plea pursuant to this agreement.

16   

17   JAMES E. BLATT                              Date    9-9-21
     Attorney for Defendant DALTON
18   WINFIELD COSTAHAUDE

19

20

21

22

23

24

25

26

27

28

                                    26